**FILED**
**Feb 28, 2020**
**01:02 PM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



## TENNESSEE BUREAU OF WORKERS' COMPENSATION CLAIMS
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MURFREESBORO

| | | |
|---|---|---|
| **GEORGE MASON,** | ) | **Docket No. 2019-05-0988** |
| **Employee,** | ) | |
| **v.** | ) | |
| | ) | |
| **RYDER INTEGRATED,** | ) | **State File No. 55115-2019** |
| **LOGISTICS, INC.,** | ) | |
| **Employer.** | ) | |
| **And** | ) | |
| | ) | |
| **RYDER SERVICES CORP.,** | ) | **Judge Dale Tipps** |
| **Carrier.** | ) | |

---

### EXPEDITED HEARING ORDER DENYING BENEFITS

---

This case came before the Court on February 24, 2020, for an Expedited Hearing on whether Mr. Mason is entitled to temporary disability benefits from May 1 through May 22, 2019. For the reasons below, the Court finds Mr. Mason is unlikely to succeed at a hearing on the merits and holds he is not entitled to benefits at this time.

### History of Claim

Mr. Mason lacerated his right thumb while working for Ryder at the General Motors Spring Hill plant on May 1, 2019. The parties disputed exactly how the injury came to the attention of Mr. Mason's supervisors, but they agreed that Shift Leader Tony Gwin and Manager Robert Davis met with him shortly after the accident.

Mr. Mason testified that he requested first aid, a visit with GM's on-site clinic, a ride to the hospital, or an ambulance, but all were denied. Instead, Mr. Gwin and Mr. Davis referred him to Ryder's "standing panel" and recommended he go to the nearest provider on that list, American Family Care (AFC). Mr. Gwin wrote down AFC's address and gave it to Mr. Mason, who left to get treatment.

Mr. Mason, who lived in Shelbyville, testified that he was unfamiliar with the

1

Spring Hill area and did not know how to find AFC. He called his wife from the car, and she set up a conference call with his PCP's office. At his PCP's direction, Mr. Mason drove to a hospital emergency room in Shelbyville. The parties did not submit records from the emergency room, but a work release from that visit states that Mr. Mason could return to work on May 2 with "Limited use of right hand due to injury." The form did not specify the duration of this restriction.

Mr. Mason returned to work that evening and gave the work release form to his supervisor, who gave him a light-duty assignment for that shift. Mr. Mason called out of work the next day to see a specialist about his thumb. He was not scheduled to work for the next several days. On his next-scheduled day of work, May 7, Mr. Mason called Ryder and said he would not be at work that evening.

Mr. Mason saw Dr. Brian Peterson, an orthopedist, on May 8. Dr. Peterson gave him a return-to-work form that said Mr. Mason could not return to work until after he had surgery to repair a tendon. On May 9, Mr. Mason notified his supervisor that he could not work because his doctor had recommended surgery.

Ryder offered Mr. Mason a panel of orthopedic specialists on May 16, and he selected Tennessee Orthopedic Alliance. Mr. Mason saw Dr. Shervandalonn Brown on May 22. Dr. Brown recommended surgery and performed it on May 24.

Ryder began paying temporary total disability (TTD) benefits on May 22 and continued paying them through August 6.

At the hearing, Mr. Mason requested payment of TTD benefits from May 2 through May 21.[1] He contended that his decision to seek unauthorized treatment was justified because Ryder essentially denied him medical treatment when it failed to provide on-site first aid, allow him to visit the on-site clinic, or transport him to the hospital. Because of this, Mr. Mason argued he should be able to rely on the restrictions assigned by his unauthorized providers.

Ryder contended that Mr. Mason is not entitled to additional benefits. It argued that he failed to comply with the statutory requirement that he accept the medical treatment that it offered. His decision to seek unauthorized treatment was unreasonable when he drove to Shelbyville rather than go to the panel provider just a couple of miles from the plant. Ryder contended that even if that first decision were reasonable, Mr.

---

[1] Both parties presented a substantial amount of evidence regarding facts that do not have any direct bearing on the narrow issue identified in the DCN and by the parties at the start of the hearing. For example, they disputed whether Mr. Mason was wearing the required safety glove at the time of his injury. Because Ryder did not affirmatively assert defenses of misconduct or failure to follow safety rules, the Court finds no need to address this testimony at this time. Similarly, evidence regarding Mr. Mason's termination after Dr. Brown released him is not relevant to the issue before the Court.

2

Mason never took any steps to come back into compliance by going to AFC over the next three weeks. Instead, he continued to seek treatment with unauthorized providers. His actions kept Ryder from directing the medical care, a right specifically granted to employers under the Workers' Compensation Law.

**Findings of Fact and Conclusions of Law**

Mr. Mason must provide sufficient evidence from which this Court might determine he is likely to prevail at a hearing on the merits. *See* Tenn. Code Ann. § 50-6-239(d)(1) (2019); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015). He seeks temporary disability benefits, which may be awarded for either partial or total disability. *See Heard v. Carrier Corp.*, 2018 TN Wrk. Comp. App. Bd. LEXIS 16, at *5-6 (Apr. 20, 2018); *Jones v. Crencor Leasing and Sales*, 2015 TN Wrk. Comp. App. Bd. LEXIS 48, at *7 (Dec. 11, 2015).

Tennessee Code Annotated section 50-6-204(d)(8) provides, "[i]f the injured employee refuses to . . . accept the medical or specialized medical services that the employer is required to furnish under this chapter, the injured employee's right to compensation shall be suspended and no compensation shall be due and payable while the injured employee continues to refuse." Mr. Mason, after being expressly offered authorized medical treatment, chose to see his own doctor instead. This failure to see the authorized doctors constituted a refusal to accept the medical services Ryder offered. That refusal continued until he agreed to see Dr. Brown. Therefore, no compensation, including temporary disability benefits, was due Mr. Mason for that period of non-compliance.

Further, for proof of disability, Mr. Mason relied solely on restrictions assigned by the doctors at the emergency room and Dr. Peterson. Both of these providers were unauthorized. It would be inequitable and improper to require Ryder to pay temporary disability benefits based on unauthorized medical opinions when it was willing to pay for the initial treatment and authorized Mr. Mason to consult one of the physicians on the posted panel. *See Mathina v. Colonial Rubber Works*, 1984 Tenn. LEXIS 789, at *2 (Tenn. 1984).

Mr. Mason contended that this refusal to accept the offered treatment was reasonable because he did not know where AFC was located and because Ryder failed to provide appropriate medical benefits during his meeting with Mr. Gwin and Mr. Davis. The Court is not persuaded by this argument. If Mr. Mason did not know where AFC was located, he could have informed his supervisors and asked them (or called AFC) for directions. He chose not to do this.

Finally, Mr. Mason's dissatisfaction with Ryder's on-site handling of his claim does not outweigh the fact that Ryder offered him authorized treatment with a panel

physician. The Court finds his supervisors' response to the injury was appropriate. Their decision not to drive him to the doctor or call an ambulance was reasonable in view of the extent and nature of his injury, as evidenced by the fact that Mr. Mason was capable of making the hour-long drive to Shelbyville and participating in a conference call while doing so. In the absence of any evidence of an actual denial of treatment by Ryder, the Court cannot find a legally justifiable excuse for refusing the proffered treatment and must hold that Mr. Mason is not likely to prevail at a hearing on the merits.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Mason's request for temporary disability benefits is denied.

2. This case is set for a Scheduling Hearing on May 7, 2020, at 10:00 a.m. You must call toll-free at 855-874-0473 to participate. Failure to call might result in a determination of the issues without your further participation. All conferences are set using Central Time.

   **ENTERED FEBRUARY 28, 2020.**


_____
**Judge Dale Tipps**
**Court of Workers' Compensation Claims**

4

**APPENDIX**

Exhibits:
1. Affidavit of George Mason
2. First Report of Injury
3. Wage Statement
4. Orthopedic Panel
5. Standing Panel
6. Medcor Incident Report
7. Collective medical records
8. Telephone message from Dr. Brown's office
9. April 30, 2019 work excuse (I.D. only)
10. Written statement of George Mason (I.D. only)
11. July 19, 2019 Worklink report from Dr. Brown

Technical record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Employer's Response Brief
5. Employer's Witness List

## CERTIFICATE OF SERVICE

I certify that a copy of the Expedited Hearing Order was sent as indicated on February 28, 2020.

| Name | Certified Mail | Fax | Email | Service sent to: |
|------|------|------|------|------|
| George Mason | | | X | George.mason014@gmail.com |
| Stephen Morton, Employer's Attorney | | | X | Stephen.morton@mgclaw.com |

_____
**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**



<u>Expedited Hearing Order Right to Appeal</u>:

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board. To appeal an expedited hearing order, you must:

1. Complete the enclosed form entitled: "Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon all parties.

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence. The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement. All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



**NOTICE OF APPEAL**
Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

Docket No.: _____

State File No.: _____

Date of Injury: _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____      ☐ Motion Order filed on _____

☐ Compensation Order filed on_____      ☐ Other Order filed on_____

issued by Judge _____.

**Statement of the Issues on Appeal**

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

**Parties**

**Appellant(s)** (Requesting Party): _____ ☐ Employer ☐ Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐ Employer ☐ Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 ____.

_____
*[Signature of appellant or attorney for appellant]*